**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SMP
1032 13th St NW, Suite 247
Washington, DC 20005,

        Plaintiff,

        v.

FEDERAL ELECTION COMMISSION
1050 First Street NE
Washington, DC 20463,

        Defendant.

Civil Action No.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.    On August 13, 2025, Plaintiff Senate Majority PAC ("SMP") filed an administrative complaint with the Federal Election Commission (the "FEC" or "Commission"), alleging that the Nevada Victory Committee, the National Republican Senatorial Committee ("NRSC"), Sam Brown for Nevada, and Sarkes Tarzian, Inc. (together, the "Respondents") violated the Federal Election Campaign Act of 1971, as amended ("FECA"), because Sarkes Tarzian made unlawful, in-kind corporate contributions to the other Respondents in the form of discounted television advertising rates that were not available to other advertisers, including SMP, and for which the advertisements in question were not eligible.

2.    To SMP's knowledge, the Commission has not taken any action on SMP's complaint in the 176 days since SMP filed it. SMP therefore brings this action under 52 U.S.C. § 30109(a)(8)(A), because SMP is aggrieved by the Commission's failure to act on its complaint within 120 days after SMP filed it. SMP seeks a declaration that the Commission's failure to act is contrary to law, and an order directing the Commission to conform with that declaration within

30 days. 52 U.S.C. § 30109(a)(8)(C). If the Commission fails to do so, SMP will be entitled to bring a civil action in its own name to remedy the violations of FECA by the Respondents. 52 U.S.C. § 30109(a)(8)(C).

3.      The basis for SMP's complaint is Sarkes Tarzian's sale of television advertising time to the Nevada Victory Committee at a discounted rate known as the "lowest unit charge" ("LUC") in advance of the 2024 election. The Communications Act of 1934 requires broadcast stations to offer "legally qualified candidate[s]" LUC if they sell the candidates advertising time shortly before an election "in connection with [their] campaign for office." 47 U.S.C. § 315(b)(1). But the Communications Act does not entitle other political committees—including joint fundraising committees like Nevada Victory Committee—to LUC.

4.      Sarkes Tarzian's sale of advertising time at LUC to a buyer that was not entitled to that discounted rate was an illegal corporate in-kind contribution in violation of FECA. FECA prohibits "any corporation whatsoever" from offering, and candidates and party committees from accepting, contributions, including in-kind contributions in the form of discounts that are not generally available in the ordinary course of business. *See* 52 U.S.C. § 30118(a).

5.      Respondents have never acknowledged that their offering and acceptance of LUC for joint fundraising committee advertising in the 2024 election was unlawful, nor disclaimed their intent to offer and accept LUC rates for such advertising again in the future. SMP has every reason to expect that Respondents will again engage in this same unlawful behavior in future elections if enforcement action is not taken against them.

6.      Plaintiff therefore requests that the Court declare the FEC's failure to act on its complaint within 120 days is contrary to law and order the FEC to conform with that declaration within 30 days. *See* 52 U.S.C. § 30109(a)(8)(A). If the FEC does not do so, Plaintiff will commence

a civil action, naming Respondents as defendants, to remedy the violations cited in the original complaint. *See id.* § 30109(a)(8)(C).

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 52 U.S.C. § 30109(a)(8)(A) and 28 U.S.C. § 1331.

8.    Venue lies in this district under 52 U.S.C. § 30109(a)(8)(A).

## THE PARTIES

9.    Plaintiff SMP is an FEC-registered independent expenditure–only committee, colloquially known as a "Super PAC."

10.    SMP is a single legal entity that operates multiple FEC-registered filing organizations, including filing organizations called "SMP" and "WinSenate." As used in this Complaint, SMP refers to the legal entity and all of the filing organizations that it operates.

11.    SMP's singular mission is to elect Democrats to the United States Senate. During the 2023–2024 election cycle, SMP made over $350 million in disbursements in furtherance of its mission. SMP is continuing its work for the 2026 and later election cycles, when it will once again spend millions of dollars in independent expenditures to elect Democratic Senate candidates and defeat Republican Senate candidates.

12.    Many of SMP's expenditures are for television advertising. When SMP purchases television advertising, it does so at ordinary market rates. That is because SMP is not a legally qualified candidate, so it is not entitled to LUC under the Communications Act of 1934. LUC is often substantially lower than the market rates that SMP pays. SMP therefore suffers a competitive disadvantage if other committees are offered and accept LUC to which they are not legally entitled, while SMP is charged market rates. And SMP suffers an informational injury when broadcasters'

special discounts to SMP's political opponents are not reported as in-kind contributions, as FECA requires.

13.     Defendant FEC is an independent federal agency charged with the administration and civil enforcement of FECA. 52 U.S.C. § 30106(b).

## LEGAL BACKGROUND

14.     The Communications Act of 1934 entitles "legally qualified candidate[s] for office" to a discounted rate for advertising time purchased "in connection with [their] campaign" in the forty-five days before a primary election and the sixty days before a general election. 47 U.S.C. § 315(b)(1). This discounted rate, known as the lowest unit charge or LUC, is the one granted to only to the "most favored commercial advertisers." 47 C.F.R. § 1942(a)(1)(i). It must be made available to candidates but it is not generally available to other advertisers, including to political committees that are not candidate committees. As the Solicitor General recently explained to the Supreme Court, LUC is available only "for candidate spending, but not for party spending— whether coordinated or independent." Reply for Fed. Resps. 23, *NRSC v. FEC*, No. 24-621 (U.S. Oct. 2025).

15.     A corporate broadcaster cannot lawfully offer LUC to a federally regulated political committee that is not entitled to it unless it makes that discount available to all similarly situated advertisers, including to SMP. FECA prohibits "any corporation whatsoever" from making federal contributions to candidates and party committees. 52 U.S.C. § 30118(a); *see also id.* § 30118(b)(2) (defining contributions to include "services" or "anything of value"). And discounts on goods or services constitute an in-kind contribution if they are not generally available in the ordinary course of business. LUC is not generally available in the ordinary course of business.

16.     FECA authorizes the establishment of "joint fundraising" committees through which candidates jointly solicit funds and share in the resulting proceeds. *See* 52 U.S.C.

4

§ 30102(e)(3)(A)(ii). An FEC regulation provides that other political committees may engage in joint fundraising as well. *See* 11 C.F.R. § 102.17.

17.    Joint fundraising committees may accept individual contributions up to "the total amount that the contributor could contribute to all of the participants" in the committee. *Id.* § 102.17(c)(5). They then must "allocate . . . proceeds to the participants" in accordance with a written formula, subject to any changes requested by a contributor or required to avoid exceeding a contributor's contribution limit as to any participant. *Id.* § 102.17(c)(1), (c)(2)(i)(C), (c)(2)(1)(D).

18.    Joint fundraising committees must pay their own expenses before proceeds can be transferred to the participant committees, with each participant's share of expenses "based on the percentage of the total receipts each participant had been allocated." *Id.* § 102.17(c)(7)(i)(A). A participant must follow contribution limits when paying expenses on behalf of another participant. *Id.* § 102.17(c)(7)(i)(B). Once expenses are paid, a joint fundraising committee distributes net proceeds to the participants. *Id.* § 102.17(c)(7)(i)(A). After distribution, each participant committee reports its received share of net proceeds. *Id.* § 102.17(c)(8)(i)(B).

### FACTUAL BACKGROUND

19.    About a month before the 2024 United States Senate election, the NRSC created the Nevada Victory Committee, a joint fundraising committee between Sam Brown for Nevada—the principal campaign committee for Republican Senate candidate Sam Brown—and the NRSC.

20.    As FEC regulations require, Sam Brown designated the Nevada Victory Committee as an authorized committee of his campaign, so that it could raise funds on his behalf.

21.    The Nevada Victory Committee raised very little money from the public. Of the nearly $4.6 million in contributions the Nevada Victory Committee received in the 2024 election cycle, $4.45 million came from just two Republican Party committees: $3.85 million from the

Montana Republican State Central Committee, and $600,000 from the Republican National Committee.

22.    It might seem surprising that the Montana Republican Party contributed almost $4 million to a Senate race in Nevada. But the explanation is simple—it was not really the Montana Republican Party's money. It was the NRSC's money. In September and October of 2024, the NRSC contributed $19.5 million to the Montana Republican State Central Committee, and the Montana Republican State Central Committee then contributed more than $18 million back to joint fundraising committees for Senate candidates in other states in which the NRSC was a participant, including the Nevada Victory Committee. This arrangement accounted for more than 70 percent of the Montana Republican State Central Committee's federally regulated receipts and disbursements in 2023 and 2024.

23.    The vast majority of the funds raised by the Nevada Victory Committee—more than 80 percent—therefore came from the NRSC itself, via the Montana Republican State Central Committee.

24.    The Nevada Victory Committee spent substantially all the funds it raised disseminating television advertisements in connection with the 2026 Nevada U.S. Senate election. Of the almost $4.6 million the Nevada Victory Committee raised, $4.426 million was spent on "operating expenditures," while less than $200,000 was transferred to the participating committees—Sam Brown for Senate and the NRSC—as fundraising proceeds. Nearly all of the operating expenditures ($4.415 million) were for advertising.

25.    In substance, the Nevada Victory Committee therefore served as a means by which the NRSC and, to a lesser extent, the RNC purchased media advertising in support of Sam Brown's Senate campaign, rather than as a true fundraising vehicle for the participating committees.

26.    Among the Nevada Victory Committee's advertising expenditures were multiple television advertisements run on the Reno, Nevada television station KTVN Channel 2, which Sarkes Tarzian owns. Sarkes Tarzian sold the advertising time for those advertisements to the Nevada Victory Committee at the political candidate rate—the LUC.

27.    LUC was not a discount offered by Sarkes Tarzian in the ordinary course of its business to clients like the Nevada Victory Committee.

28.    The Nevada Victory Committee benefitted from LUC in its advertising in support of Sam Brown's Senate campaign on Sarkes Tarzian's station, while other similarly situated political committees—including SMP—paid far more for the same class of advertising time.

29.    The NRSC and the RNC would not have been entitled to LUC if they had purchased this advertising time directly, because they are not "legally qualified candidates."

30.    The Nevada Victory Committee was not entitled to LUC, either, because it is not a "legally qualified candidate."

31.    Sarkes Tarzian's sale of advertising time to the Nevada Victory Committee at LUC was an illegal corporate contribution to the Nevada Victory Committee, Sam Brown for Nevada, and the NRSC, because the Nevada Victory Committee was not entitled to receive LUC and did because Sarkes Tarzian did not offer LUC in the ordinary course of its business.

32.    Since the 2024 elections, Respondents have done nothing to disclaim their offering and acceptance of LUC for advertising purchased by joint fundraising committees or to suggest that they will not engage in the same practice in the 2026 and future elections. Therefore, if the FEC does not act on SMP's complaint, Respondents will continue to violate the law in future election cycles.

33.     SMP is directly harmed by Respondents' illegal activities, and by the FEC's failure to investigate and penalize them. SMP is a core participant in a competitive political environment in which the NRSC's mission of electing Republican senators is directly at odds with SMP's mission of electing Democratic senators, giving SMP a clear and particular stake in challenging the NRSC's and the other Respondents' unlawful actions. SMP is also a very large funder of political advertising in its own right and is directly harmed by Sarkes Tarzian's offering of unlawful discounts to the Nevada Victory Committee that it does not offer to other advertisers, including to SMP.

34.     Because of the FEC's failure to investigate and penalize Respondents' illegal actions, SMP is being forced to compete on a playing field where Respondents are violating the rules to their own advantage, and paying advertising rates to which they are not entitled, and which are not available to SMP. SMP has been and will be required to spend more money in an attempt to level that playing field that simultaneously advantages its opponent and disadvantages SMP: the Nevada Victory Fund will be able to buy more advertising at reduced rates while SMP will have to buy its advertising at higher rates.

35.     SMP also suffers an informational injury when contributions, including in-kind contributions in the form of special discounts, are not disclosed and reported as FECA requires. If the discounted advertising rates at issue in SMP's complaint had been reported as in-kind contributions, it would have aided SMP in attempting to negotiate a discount of its own. It would also have informed SMP that Sarkes Tarzian was supporting SMP's political adversaries by offering it special discounts that were not generally available to similarly situated advertisers. Had SMP known that, it might have affected SMP's decision whether to purchase advertising time from

Sarkes Tarzian, and SMP might have publicized the special discounts in SMP's own political communications.

36.     SMP intends to continue spending in the upcoming Senate elections in 2026 and thereafter, but if FEC inaction allows Respondents to continue to violate campaign finance law without consequences, SMP will continue to face a competitive disadvantage and informational injury.

## CAUSE OF ACTION

### Count I: 52 U.S.C. § 30109(a)(8)(A)

37.     Plaintiff repeats and realleges the forgoing paragraphs if set forth fully herein.

38.     On August 13, 2025, SMP, through its president JB Poersch, filed an administrative complaint with the FEC, naming Respondents and presenting those of the above facts that were available to Plaintiff at the time. *See generally* Ex. 1.

39.     Upon information and belief, the FEC has failed to act on Plaintiff's administrative complaint since SMP filed it 176 days ago, exceeding the 120-day statutory response period.

40.     Defendant's failure to act on Plaintiff's administrative complaint is contrary to law under 52 U.S.C. § 30109(a)(8)(A), which provides Plaintiff a cause of action for "a failure of the Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed."

### REQUESTED RELIEF

WHEREFORE, Plaintiff requests this Court:

(1) Declare that the FEC's failure to act on Plaintiff's administrative complaint was contrary to law under 52 U.S.C. § 30109(a)(8)(A);

(2) Order the FEC to conform with this declaration within 30 days pursuant to 52 U.S.C. § 30109(a)(8)(C);

9

(3) Award Plaintiff its costs and reasonable attorneys' fees incurred in this action; and

(4) Grant such other relief as the Court may deem just and proper.

Dated: February 5, 2026

Respectfully submitted,

/s/*David R. Fox*
David. R. Fox (D.C. Bar No. 1015031)
dfox@elias.law
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, D.C. 20001
Tel: (202) 968-4490

10