# Exhibit 1

**BEFORE THE**
**FEDERAL ELECTION COMMISSION**

SMP
1032 15th Street NW, Suite 247
Washington, DC 20005

       Complainant,

v.

Nevada Victory Committee
502 Monroe Street
Newport, KY 41071

NRSC
425 2nd Street NE
Washington, DC 20002

Sam Brown for Nevada
P.O. Box 750844
Las Vegas, NV 89136

Sarkes Tarzian, Inc. d/b/a KTVN Channel 2
4925 Energy Way
Reno, NV 89502

       Respondents.

**COMPLAINT**

Complainant files this complaint under 52 U.S.C. § 30109(a)(1) against Nevada Victory Committee (the "*Nevada Victory Committee*"), the National Republican Senatorial Committee ("*NRSC*"), Sam Brown for Nevada (collectively, "*Campaign Respondents*"), and Sarkes Tarzian, Inc., doing business as KTVN Channel 2 ("*Sarkes Tarzian*") (together with Campaign Respondents, "*Respondents*"), for violating the Federal Election Campaign Act of 1971, as amended ("*FECA*") and Federal Election Commission ("*FEC*" or "*Commission*") regulations that prohibit corporate contributions.

1

The Communications Act of 1934, as amended, requires broadcast stations to provide a discount to a "legally qualified candidate" on the cost of television advertising that is "in connection with [their] campaign" for office.[1] This discounted rate is referred to as "lowest unit charge" (*"LUC"*). FECA, in turn, prohibits corporate contributions to political committees. As a narrow exception to this rule, a corporation can provide a political committee with a discount on the cost of goods or services without making a contribution if it provides the discount in the ordinary course of business – where the committee satisfies the standard terms and conditions necessary to receive the discount. If a discount is provided by a corporation to a political committee outside of the ordinary course, a prohibited corporate contribution results.

Sarkes Tarzian provided the LUC discount to the Nevada Victory Committee for television advertising that raised money for a joint fundraising committee. The Nevada Victory Committee is not a legally qualified candidate, nor was the advertising run in connection with a candidate's campaign for office. Thus, it appears that Sarkes Tarzian provided the Nevada Victory Committee with the LUC discount on television advertising that did not qualify for the discount, resulting in a prohibited corporate contribution.

**BACKGROUND**

i.      <u>Sam Brown for Nevada and the Nevada Victory Committee</u>

Under FECA, a federal candidate must designate a principal campaign committee, which is the primary committee through which the candidate will conduct their campaign activity.[2] A candidate may also designate additional "authorized committees" – any political committee, in

---

[1] 47 U.S.C. § 315(b)(1).
[2] 52 U.S.C. § 30102(e)(1) ("Each candidate for Federal office (other than the nominee for the office of Vice President) shall designate in writing a political committee . . . to serve as the principal campaign committee of such candidate.")

addition to the principal campaign committee, that is authorized by the candidate to raise and spend funds on the candidate's behalf.[3]

FEC regulations allow candidates to raise contributions jointly with other committees through a joint fundraising committee.[4] Joint fundraising committees operate to raise funds for all of the participants in the joint effort and are required to divide expenses among participants according to the percentage of fundraising proceeds each receives.[5] Any joint fundraising committee with a candidate participant is required to be designated as an authorized committee of the candidate in order to receive funds on the candidate's behalf.[6]

Sam Brown was a candidate for 2024 general election candidate for U.S. Senate in Nevada.[7] His principal campaign committee was Sam Brown for Nevada (the "***Brown Campaign***").[8] The Brown Campaign and the NRSC set up a joint fundraising committee called the Nevada Victory Committee and registered it on October 8, 2024, with the FEC.[9] As a joint fundraising committee, the Nevada Victory Committee operated to raise funds for both the Brown Campaign and NRSC. The Nevada Victory Committee was designated as an authorized committee of Sam Brown so it could accept funds on his behalf.[10]

---

[3] *Id.* §§ 30102(e)(1); 30101(6).
[4] 11 C.F.R. § 102.17(a)(1)(i).
[5] *Id.* § 102.17(a)(1)(i), (c)(7).
[6] *Id.* § 102.17(a)(1)(i).
[7] FEC, Form 2: Statement of Candidacy Sam Brown (Oct. 14, 2024), https://docquery.fec.gov/pdf/954/202410149685131954/202410149685131954.pdf (last accessed Aug. 7, 2025).
[8] FEC, Form 1: Statement of Organization Sam Brown for Nevada (Oct. 14, 2024), https://www.fec.gov/data/committee/C00845032/?cycle=2024 (last accessed Aug. 7, 2025).
[9] FEC, Form 1: Statement of Organization Nevada Victory Committee (Oct. 8, 2024), https://docquery.fec.gov/pdf/020/202410089684826020/202410089684826020.pdf (last accessed Aug. 7, 2025).
[10] *See id.*; FEC, Form 1: Statement of Organization Sam Brown for Nevada (Oct. 14, 2024), https://www.fec.gov/data/committee/C00845032/?cycle=2024 (last accessed Aug. 7, 2025).

Reports filed with the FEC demonstrate that the NRSC received approximately 97% of the Nevada Victory Committee's total proceeds.[11] Thus, assuming the Nevada Victory Committee followed FEC regulations, the NRSC should have paid approximately 97% of the committee's operating costs. The Nevada Victory Committee spent $4,426,602.69 on operating expenditures.[12] Out of this amount, $4,415,346 was spent on advertising – "media," "media production," "media/digital consulting," "advertising," and "advertising/digital consulting."[13]

ii.      The Advertisements

KTVN Channel 2 is a television station serving Reno, Nevada and is licensed by the Federal Communications Commission to Sarkes Tarzian, Inc.[14] Sarkes Tarzian is incorporated in Indiana.[15]

The Nevada Victory Committee disseminated multiple television advertisements via Sarkes Tarzian in October and November of 2024.[16] The Nevada Victory Committee paid $161,266.25 to Sarkes Tarzian for their advertisements and those advertisements were classified as receiving the candidate rate.[17] Each advertisement raised funds for the joint fundraising committee through a verbal solicitation, as well as a Quick Response "QR" code, which directed viewers to an online page where they could contribute to the Nevada Victory Committee.[18]

---

[11] FEC, Nevada Victory Committee, Financial Summary, https://www.fec.gov/data/committee/C00890962/?tab=summary (last accessed Aug. 7, 2025).
[12] Id.
[13] FEC, Nevada Victory Committee, Disbursements, https://www.fec.gov/data/disbursements/?committee_id=C00890962&two_year_transaction_period=2024&data_type=processed (last accessed Aug. 7, 2025).
[14] FCC, Public Inspection File – KTVN, https://publicfiles.fcc.gov/tv-profile/KTVN (last accessed Aug. 7, 2025).
[15] Indiana Secretary of State, Business Entity Search, https://www.in.gov/core/mobile/business-search.html (last accessed Aug. 7, 2025).
[16] FCC, 2024 Political Files – KTVN, https://publicfiles.fcc.gov/tv-profile/KTVN/political-files/2024/federal/us-senate/nevada-victory-committee---sam-brown/5a7ea6fc-945b-e6ee-6240-a8578a343a49/ (last accessed Aug. 7, 2025).
[17] Id. See also AdImpact Nevada Victory Committee, KTVN (Reno).
[18] Id. See also Exhibit A.

The Nevada Victory Committee submitted numerous "Candidate Advertisement Agreement Forms" to Sarkes Tarzian.[19] Each Candidate Advertisement Agreement Form represented that "the payment for the broadcast time requested" was furnished by an authorized committee of Mr. Sam Brown, a legally qualified federal candidate.[20]

As noted, the Nevada Victory Committee reported spending $4,415,346 on media and advertising. The Nevada Victory Committee did not disclose any information on which expenditures expressly advocated for the Brown campaign, the dissemination dates of any advertisements, or what discount they received from the Sarkes Tarzian.

iii.    <u>SMP</u>

SMP is an independent expenditure-only committee with a singular mission of electing Democrats to the U.S. Senate.[21] During the 2023-2024 cycle, SMP made over $350 million in disbursements in furtherance of its mission and has continued its work for the 2026 election cycle.[22] SMP reviews NRSC activity, including its joint fundraising activity, to assess sources and strength of support for rival candidates to evaluate the viability of their own candidates, and to make informed strategic and resource-allocation decisions. SMP also competes with NRSC, Republican candidates, and Republican Super PACs, all of which likewise spend funds advocating for the election of rival candidates subject to FECA and FEC regulations, and it has a concrete, non-speculative interest in its right to compete in elections under lawful rules of the

---

[19] FCC, 2024 Political Files – KTVN, https://publicfiles.fcc.gov/tv-profile/KTVN/political-files/2024/federal/us-senate/nevada-victory-committee---sam-brown/nab/c2216ba2-cf6d-9058-9449-74e7490abe3c (last accessed Aug. 7, 2025).

[20] *Id.*

[21] SMP, Committee ID: C00484642, https://www.fec.gov/data/committee/C00484642/; Senate Majority PAC, *About Us*, https://senatemajority.com/about-us/ (last accessed Aug. 7, 2025).

[22] SMP, 2024 Year End Report, https://docquery.fec.gov/cgi-bin/forms/C00484642/1873693/ (last accessed Aug. 7, 2025).

game. Because the Respondents are violating the law, SMP has to spend more money to try to create an even playing field on which Democratic Senate candidates can compete.

## LEGAL ANALYSIS

Federal campaign finance law wholly prohibits corporations from making contributions in connection with a federal election. This prohibition prevents political committees from receiving anything of value from a corporation, including discounts provided outside of the ordinary course of business. Respondents violated federal campaign finance law when Sarkes Tarzian provided the Nevada Victory Committee with LUC – discounts that the Campaign Respondents were not eligible to receive, and that Sarkes Tarzian was not giving to other similar advertisers.

i.    Legal Background

    *a.*    *Corporate Contributions*

Under FECA, corporations are prohibited from making a contribution.[23] FECA defines a contribution to include a "gift of money or anything of value, made by any person for the purpose of influencing any election for Federal office."[24] Under FEC regulations "anything of value" includes goods or services provided at "less than the usual and normal charge for such goods or services."[25] The "usual and normal charge" for services is the "commercially reasonable rate prevailing at the time the services were rendered."[26]

A corporation may provide a discount to political committees without making a prohibited contribution only if the corporation can show that the discount was provided in the ordinary course of business, under the same standard terms and conditions that would entitle a

---

[23] 52 U.S.C. § 30118(a).
[24] *Id.* § 30101(8)(A)(i).
[25] 11 C.F.R. § 100.52(d)(1).
[26] *Id.* § 100.52(d)(2).

non-political customer to the same discount.[27] Any other discount or preferential treatment, including preferential treatment based on political considerations, is an in-kind contribution.[28]

b.    *Lowest Unit Charge*

The Communications Act makes the LUC discount available to a legally qualified candidate, for advertising in connection with their campaign. Under Section 315(b)(1) of the Communications Act, during the forty five days before a candidate's primary election and the sixty days before the candidate's general election "[t]he charges made for the use of any broadcasting station by any person ***who is a legally qualified candidate*** for any public office ***in connection with his campaign*** for nomination for election, or election, to such office" shall not exceed "***the lowest unit charge of the station for the same class and amount of time for the same period.***"[29]

Separately, Section 315(b)(2)(A) of the Communications Act sets out disclaimer requirements that federal candidates must meet to maintain their right to LUC. That section provides "[i]n the case of a candidate for Federal office" LUC is not available unless "the candidate provides written certification to the broadcast station that the candidate (and any authorized committee of the candidate)" will follow certain disclaimer requirements "in any broadcast using the rights and conditions of access under this chapter."[30] That provision does not confer a separate or additional right to LUC beyond the grant to federal candidates under Section 315(b)(1). Rather, it imposes a disclaimer requirement on advertising by a federal candidate who

---

[27] FEC, Adv. Op 1996-02 (CompuServe), https://www.fec.gov/files/legal/aos/1996-02/1996-02.pdf (last accessed Aug. 7, 2025).
[28] *Id.*
[29] 47 U.S.C. § 315(b) (emphasis added).
[30] *Id.* § 315(b)(2)(A).

is already entitled to LUC and uses a parenthetical to indicate such advertising may occur via an authorized committee, and if it does, the same disclaimer requirements still apply.

ii.      Legal Violation

The Nevada Victory Committee illegally received heavily discounted rates violation of FECA's prohibition on corporate contributions and Sarkes Tarzian illegally contributed to the Nevada Victory Committee by providing such heavily discounted rates. The advertisements were not a use by a federal candidate or made "in connection with" the candidate's campaign, and Sarkes Tarzian does not offer the discounts that were given to the Nevada Victory Committee and passed on to the NRSC and Brown Campaign in the ordinary course of business. Accordingly, Sarkes Tarzian illegally provided—and the Campaign Respondents illegally accepted—the discounts, which plainly amount to prohibited corporate contributions under FECA.

### a. The Advertisements Were Not a Use by a Legally Qualified Candidate

The Communications Act only provides the LUC discount for the "use of any broadcasting station by . . . a legally qualified candidate."[31] The Nevada Victory Committee's advertising was not a use of a station by a legally qualified candidate. The Nevada Victory Committee is not equivalent to a candidate. It is a joint fundraising committee that did not operate to further any one individual's candidacy but rather to "to act as fundraising representative for all participants."[32] And in fact, public FEC filings indicate that Nevada Victory Committee operated almost exclusively to raise funds for the NRSC, who received approximately 97% of total proceeds. Assuming the NRSC adhered to the FEC's joint

---

[31] *Id.* § 315(b)(1).
[32] 11 C.F.R. § 102.17(a)(1)(i).

8

fundraising regulations, it also paid 97% of the Nevada Victory Committee's expenses. Thus, the NRSC, not the Brown Campaign, paid almost the entire cost of the advertisements placed with Sarkes Tarzian. In short, the advertising was neither placed nor paid for by a legally qualified candidate and did not qualify for LUC.

The fact that the Nevada Victory Committee is listed as an "authorized committee" on paperwork submitted to Sarkes Tarzian does not change the analysis. The Communications Act does not extend the right to LUC beyond the use by a candidate. Rather, it mentions authorized committees only to clarify that the disclaimer requirements that apply to a candidate using LUC also extend to their authorized committees, if a candidate's use occurs through their authorized committee. Given that some authorized committees operate as principal campaign committees – rendering them indistinct from the candidate themselves – and others operate for joint fundraising and to benefit multiple entities, it makes sense that the Communications Act would recognize that authorized committee advertising *may sometimes* qualify for LUC *and if it does*, it must follow the enumerated disclaimer requirements tied to the receipt of LUC.

b.  *The Advertisements Were Not "In Connection" With Mr. Brown's Campaign*

The advertisements further fail to qualify for LUC rates because they were not "in connection" with Mr. Brown's campaign. As noted, the Communications Act requires an advertisement to be "in connection" with a legally qualified candidate's campaign to receive LUC.[33] This limitation is important: it requires that candidates not misuse the LUC right to air advertisements that are about matters other than their campaign for office (*e.g.*, commercial activity). There is no wiggle room in the text of the Communications Act that would allow for LUC, even if the "primary purpose" or "major purpose" of the advertisement is in connection

_____

[33] 47 U.S.C. § 315(b)(1).

with the campaign. Rather, the requirement's plain text applies to the whole advertisement.[34] As noted, joint fundraising committees like the Nevada Victory Committee must operate to "act as fundraising representative for all participants."[35] FEC regulations thus required the Nevada Victory Committee to conduct all its activities, including the advertising on Sarkes Tarzian, to fundraise for the NRSC and Sam Brown for Nevada. And again, approximately 97% of overall fundraising proceeds went to the NRSC, not Sam Brown's campaign. Therefore, the advertising was plainly not "in connection" with Mr. Brown's campaign, but rather was in connection with a separate joint fundraising effort.

iii.    <u>The Amount Charged to the Nevada Victory Committee Was Not a Legal Commercial Discount</u>

As demonstrated above, the Nevada Victory Committee was not entitled to LUC for the advertising it placed with Sarkes Tarzian, nor was the discount otherwise offered in the ordinary of business to other purchasers of advertising time in similarly large volumes, such as political groups who engaged independently. Instead, Sarkes Tarzian gave the Nevada Victory Committee discounted television airtime outside of its normal commercial practices – resulting in prohibited in-kind corporate contributions to Campaign Respondents.

**CONCLUSION**

Federal campaign finance law only allows corporations to provide discounts to political committees if they do so in the ordinary course of business, on the same terms and conditions offered to everyone. The terms and conditions of the lowest unit charge discount require that the advertising is by a legally qualified candidate in connection with their campaign for office. The

---

[34] *See id.* ("The charges made for the use of any broadcasting station by any person who is a legally qualified candidate for any public office in connection with his campaign for nomination for election, or election, to such office shall not exceed. . . .").

[35] 11 C.F.R. § 102.17(a)(1)(i).

Nevada Victory Committee advertising at issue was by a joint fundraising committee, in connection with fundraising activity on behalf of the NRSC. The terms and conditions of the lowest unit charge discount were not met and the provision of it by Sarkes Tarzian to the Campaign Respondents resulted in a prohibited corporate contribution under FECA.

## REQUEST FOR ACTION

The Commission should immediately investigate the extent Respondents violated FECA's prohibition on corporate contributions under 52 U.S.C. § 30118(a), as well as the failure to disclose these in-kind contributions under 52 U.S.C. § 30104. If any violation is found, we respectfully request that the Commission fine Respondents the maximum amount permitted by law.

Sincerely,

SMP, by
JB Poersch
1032 15th Street NW, Suite 247
Washington, DC 20005

SUBSCRIBED AND SWORN to before me this 13th day of August 2025.

Notary Public

My Commission Expires:

11/14/26

11

**EXHIBIT A**

