**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SENATE MAJORITY PAC,<br><br>       Plaintiff,<br><br>    v.<br><br>FEDERAL ELECTION COMMISSION,<br><br>       Defendant. | Civil Action No. 1:26-cv-337-RJL |

**SMP'S OPPOSITION TO NRSC'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION ........................................................................................................................ 1

BACKGROUND .......................................................................................................................... 3

I. Legal Background ................................................................................................................ 3

II. The NRSC violates FECA. .................................................................................................. 4

III. SMP's Complaint. ............................................................................................................... 6

LEGAL STANDARD .................................................................................................................. 6

ARGUMENT ............................................................................................................................... 7

I. SMP has standing. ............................................................................................................... 7

    A. SMP has adequately pleaded a competitive injury. ................................................... 7

    B. SMP has adequately pleaded an informational injury. ........................................ 10

    C. SMP's injuries are redressable. ............................................................................... 15

II. The FEC has not acted on SMP's administrative complaint. ........................................... 17

III. The FEC's failure to act on SMP's Administrative Complaint is contrary to law. .......... 18

    A. The *Common Cause* and *TRAC* factors demonstrate that the FEC's failure was contrary to law. ................................................................................... 18

    B. The FEC's lack of quorum necessitates, rather than precludes, judicial review. ................................................................................................................... 23

IV. FECA does not violate Article II. ...................................................................................... 25

CONCLUSION ........................................................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AB PAC v. FEC*,
No. 22-cv-2139 (TJK), 2023 WL 4560803 (D.D.C. July 17, 2023) ............................. 9, 10

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
570 U.S. 1 (2013) ....................................................................................................... 24

*Animal Legal Defense Fund, Inc. v. Vilsack*,
111 F.4th 1219 (D.C. Cir. 2024) ................................................................................. 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................. 6, 7

*Bluman v. FEC*,
800 F. Supp. 2d 281 (D.D.C. 2011) ............................................................................ 11

*Bost v. Ill. State Bd. of Elections*,
607 U.S. 71 (2026) ....................................................................................................... 9

*\*Campaign Legal Center v. Iowa Values*,
573 F. Supp. 3d 243 (D.D.C. 2021) ...................................................................... *passim*

*Campaign Legal Ctr. & Democracy 21 v. FEC*,
952 F.3d 352 (D.C. Cir. 2020) ................................................................................... 12

*Campaign Legal Ctr. v. 45Comittee, Inc.*,
118 F.4th 378 (D.C. Cir. 2024) .............................................................................. 17, 18

*\*Campaign Legal Ctr. v. FEC*,
31 F.4th 781 (D.C. Cir. 2022) ............................................................... 10, 11, 14, 15

*Campaign Legal Ctr. v. FEC*,
No. 19-cv-2336 (JEB), 2025 WL 315143 (D.D.C. Jan. 28, 2025) ................................. 25

*Cannon v. Watermark Ret. Cmtys., Inc.*,
45 F.4th 137 (D.C. Cir. 2022) .................................................................................... 24

*Coal. for Underground Expansion v. Mineta*,
333 F.3d 193 (D.C. Cir. 2003) ..................................................................................... 6

*\*Common Cause v. FEC*,
489 F. Supp. 738 (D.D.C. 1980) ............................................................................ 18, 20

*CREW v. Am. Action Network*,
410 F. Supp. 3d 1 (D.D.C. 2019) ................................................................................ 27

ii

*CREW v. FEC*,
    892 F.3d 434 (D.C. Cir. 2018) .................................................................... 26

*CREW v. FEC*,
    No. 22-cv-3281 (CRC), 2023 WL 6141887 (D.D.C. Sep. 20, 2023) ............................... 11

*DSCC v. FEC*,
    No. Civ.A. 95-0349 (JHG), 1996 WL 34301203 (D.D.C. Apr. 17, 1996) ....................... 22

*End Citizens United PAC v. FEC*,
    69 F.4th 916 (D.C. Cir. 2023) .................................................................... 26

*End Citizens United PAC v. FEC*,
    No. 22-5277, 2024 WL 4524248 (D.C. Cir. Oct. 15, 2024) ............................................ 26

*End Citizens United PAC v. FEC*,
    No. CV 21-2128 (RJL), 2022 WL 4289654 (D.D.C. Sep. 16, 2022) ............... 8, 11, 12, 14

*\*FEC v. Akins*,
    524 U.S. 11 (1998) ............................................................................... 2, 12

*FEC v. Rose*,
    806 F.2d 1081 (D.C. Cir. 1986) .................................................................. 22

*Giffords v. FEC*,
    No. 19-cv-1192 (EGS), 2021 WL 4805478 (D.D.C. Oct. 14, 2021) ........................ *passim*

*Gottlieb v. FEC*,
    143 F.3d 618 (D.C. Cir. 1998) ..................................................................... 8

*Griffin v. Dep't of Lab. Fed. Credit Union*,
    912 F.3d 649 (4th Cir. 2019) ..................................................................... 14

*Harbury v. Deutch*,
    244 F.3d 956 (D.C. Cir. 2001) ..................................................................... 8

*Hernstadt v. FCC*,
    677 F.2d 893 (D.C. Cir. 1980) .................................................................. 3, 15

*Ho v. Garland*,
    106 F.4th 47 (D.C. Cir. 2024) ..................................................................... 6

*IBP, Inc. v. Alvarez*,
    546 U.S. 21 (2005) ................................................................................ 17

*Jibril v. Mayorkas*,
    20 F.4th 804 (D.C. Cir. 2021) .................................................................... 15

iii

*Jones v. Kirchner*,
    835 F.3d 74 (D.C. Cir. 2016) ................................................................................... 7

*Laufer v. Looper*,
    22 F.4th 871 (10th Cir. 2022) ............................................................................... 13

*Level the Playing Field v. FEC*,
    232 F. Supp. 3d 130 (D.D.C. 2017) ...................................................................... 18

*Martha's Vineyard/Dukes Cnty. Fishermen's Ass'n v. Locke*,
    811 F. Supp. 2d 308 (D.D.C. 2011) ........................................................................ 6

*Mashaghzadehfard v. Blinken*,
    Case. No. 23-cv-3164 (RJL), 2024 WL 4198689 (D.D.C. Sept. 16, 2024)...................... 21

*McCutcheon v. FEC*,
    496 F. Supp. 3d 318 (D.D.C. 2020) ............................................................... 24, 25

*Nader v. FEC*,
    725 F.3d 226 (D.C. Cir. 2013) ............................................................................. 16

*Neguse v. U.S. Immigr. & Customs Enf't*,
    813 F. Supp. 3d 45 (D.D.C. 2025) .................................................................. 13, 14

*Perot v. FEC*,
    97 F.3d 553 (D.C. Cir. 1996) .......................................................................... 17, 18

*Polselli v. IRS*,
    598 U.S. 432 (2023) ............................................................................................. 25

*\*Shays v. FEC*,
    414 F.3d 76 (D.C. Cir. 2005) ..................................................................... 7, 8, 10

*Sherley v. Sebelius*,
    610 F.3d 69 (D.C. Cir. 2010) ................................................................................. 7

*Slinski v. Bank of Am., N.A.*,
    981 F. Supp. 2d 19 (D.D.C. 2013) .......................................................................... 7

*\*Telecommunications Research & Action Center v. FCC,*
    750 F.2d 70 (D.D.C. 1984) ........................................................................ 18, 21, 23

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ............................................................................................... 5

**Statutes and Regulations**

5 U.S.C. § 706 ................................................................................................................... 24

47 U.S.C. § 315 ................................................................................................................... 3

52 U.S.C. § 30102 ............................................................................................................... 4

52 U.S.C. § 30106 ............................................................................................................. 20

52 U.S.C. § 30107 ............................................................................................................. 20

52 U.S.C. § 30108 ............................................................................................................. 24

52 U.S.C. § 30109 ..................................................................................................... *passim*

52 U.S.C. § 30118 ............................................................................................................... 3

11 C.F.R. § 100.52 .............................................................................................................. 4

11 C.F.R. § 102.17 ............................................................................................................ 16

**Other Authorities**

FCC Media Bureau's March 30, 2026, Public Notice providing Guidance on Entitlement
      to Lowest Unit Charge for Legally Qualified Candidates for Federal Office and
      All Authorized Committees, DA 26-300 ....................................................................... 16

FCC Public Inspection File: KTVN Political Files (as last accessed May 21, 2026),
      https://publicfiles.fcc.gov/tv-profile/KTVN/political-files/2024/non-candidate-
      issue-ads/winsenate/7c395603-9cf3-0dce-e9c9-db7c7c596d6b ....................................... 5

Order, *Campaign Legal Ctr. v. FEC*, No. 1:20-cv-1778 (D.D.C. Oct. 14, 2020),
      ECF No. 14 ................................................................................................................ 24

Order, *Campaign Legal Ctr. v. FEC*, No. 1:20-cv-1778 (D.D.C. Feb. 11, 2021),
      ECF No. 24 ................................................................................................................ 24

Reply Brief for the Federal Respondents, *NRSC v. FEC*, No. 24-261 (U.S. Oct. 29, 2025),
      2025 WL 3068193 ........................................................................................................ 3

**INTRODUCTION**

In the 2024 election cycle, the National Republican Senatorial Committee (NRSC) spent almost $200,000 on campaign advertisements in support of Republican Senate candidates at a discounted rate without properly reporting that discount as in-kind contribution from the corporate entity that provided it, Sarkes Tarzian, in plain violation of the Federal Election Campaign Act of 1971 (FECA). In August 2025, Senate Majority PAC (SMP), a Super PAC that competes directly with the NRSC to support the election of Democratic Senate candidates and oppose the election of Republican Senate candidates, filed an administrative complaint with the Federal Election Commission (FEC) to challenge the NRSC's receipt of unlawful and unreported contributions. SMP filed that complaint to protect itself from the NRSC's unfair competition in the limited markets for campaign advertising and voter persuasion, as well as vindicate its private interests in obtaining a complete and accurate picture of the NRSC's finances. Nearly nine months later, the FEC has not taken any action on SMP's complaint. It cannot do so, because the FEC is without a quorum. The NRSC has not disclaimed its past violations in the 2026 election cycle, and SMP is suffering yet another cycle of unfair competition and incomplete information.

Congress provided a remedy for this problem: a "party aggrieved" by the FEC's failure to act on a complaint may seek a declaration from this Court that the inaction is "contrary to law," and, if the FEC fails to conform with that declaration, may then sue the alleged violator directly. 52 U.S.C. § 30109(a)(8)(A), (C). With the 2026 election cycle now well underway, SMP brought this action to avail itself of that remedy.

SMP has standing based on two forms of injury. First, SMP suffers a competitive injury from the NRSC's unlawful conduct in support of Senate candidates that it is SMP's business to oppose (and vice versa). Both SMP and the NRSC are non-candidate advocacy groups that raise and spend money to support opposing candidates for Senate across the country. They therefore

directly compete against each other for advertising time and voter attention, in many instances buying advertising time from the same stations to run competing ads. The NRSC's challenged conduct gives it an unlawful advantage in that competition, by allowing it to benefit from reduced advertising rates that are not available to SMP and, therefore, to get more advertising time for less spending than should be available to the NRSC under federal law. That is an unlawful advantage that directly harms SMP.

Second, the NRSC's unlawful conduct meant it failed to accurately report in-kind contributions from broadcast stations, a textbook informational injury to organizations like SMP that use campaign finance information to participate in the political process. *See FEC v. Akins*, 524 U.S. 11, 21 (1998). SMP relies on accurate disclosures from the NRSC to inform its advocacy, to make difficult decisions about allocation of limited resources, and to participate in the political process. SMP spends millions of dollars each cycle opposing the very candidates that the NRSC supports (and supporting those that the NRSC opposes), and the NRSC's inadequate disclosures directly undermine SMP's efforts.

SMP has also adequately pleaded that the FEC's failure to act on SMP's complaint is contrary to law. The FEC's complete and continued inaction is not justified by any complexity, need for investigation, or discretionary choice to delay—the FEC has simply had too few members to act. FECA's citizen suit provision exists to provide a backstop to a paralyzed FEC. And the NRSC's argument that FECA's entire enforcement mechanism violates Article II of the Constitution is a nonstarter. While exercises of prosecutorial discretion are generally unreviewable, the FEC has not and could not exercise any discretion, because it has no quorum with which to do so. The NRSC's suggestion that FECA's citizen suit provision impermissibly

allows private parties to exercise state power ignores that, like any other private right of action, it merely allows private plaintiffs to vindicate their own private interests, as SMP does here.

The Court should deny the NRSC's motion to dismiss, enter default judgment against the FEC, and, after giving the FEC the required thirty days to conform, allow SMP to vindicate its rights in a private suit against the NRSC.

## BACKGROUND

### I.    Legal Background

Section 315(b)(1) of the Communications Act of 1934 entitles "legally qualified candidate[s] for any public office" who "use . . . any broadcasting station" shortly before their elections to do so at "the lowest unit charge of the station for the same class and amount of time for the same period." 47 U.S.C. § 315(b)(1). This valuable entitlement takes effect 45 days before the candidate's primary election or runoff and 60 days before the candidate's general election. *Id.* § 315(b)(1)(A). It was enacted in its present form as part of the Federal Election Campaign Act of 1971 (FECA), which comprehensively regulates the finances of federal campaigns. *See Hernstadt v. FCC*, 677 F.2d 893, 897 (D.C. Cir. 1980). While lowest unit charge must be made available to candidates, it is not generally available to other advertisers, including to political committees that are not candidate committees. As the Solicitor General recently explained in connection with litigation over the constitutionality of party coordinated expenditure limits in *NRSC v. FEC*, this provision "require[s] broadcasters to charge low rates for candidate spending, *but not for party spending—whether coordinated or independent*." Reply Brief for the Federal Respondents at 23, *NRSC v. FEC*, No. 24-261 (U.S. Oct. 29, 2025), 2025 WL 3068193, at *23 (emphasis added).

FECA also forbids corporations from making contributions to candidates and party committees, which includes in-kind contributions such as "services" or "anything of value." 52 U.S.C. § 30118(a)–(b)(2). Discounts on services—such as broadcast advertising rates—are an in-

kind contribution when they are unavailable in the ordinary course of business. 11 C.F.R. § 100.52(d)(1). A corporate broadcaster thus cannot lawfully offer LUC to a federally regulated political committee that is not entitled to it unless it makes that discount available to all similarly situated advertisers.

FECA further authorizes the establishment of "joint fundraising" committees through which candidates jointly solicit funds and share in the resulting proceeds. *See* 52 U.S.C. § 30102(e)(3)(A)(ii). An FEC regulation provides that other political committees, like the NRSC, may engage in joint fundraising as well.

FECA provides for enforcement of these rules. *See* 52 U.S.C. § 30109(a). A party who is aggrieved by a violation of FECA files a complaint directly with the FEC. *Id.* § 30109(a)(1). The agency may proceed with an investigation if—"by an affirmative vote of 4 of its members"—the Commission determines that it has "reason to believe" there has been a violation. *Id.* § 30109(a)(2). After an investigation, the Commission again votes on whether there is "probable cause to believe" the violation occurred and may only proceed with enforcement against the violator by an affirmative vote of four members. *Id.* § 30109(a)(4). If the FEC "fail[s] to act on such complaint during the 120-day period beginning on the date the complaint is filed," an aggrieved party "may file a petition with the United States District Court for the District of Columbia," and the court may "declar[e]" that the FEC has acted "contrary to law" and "direct" that it conform. *Id.* § 30109(a)(8)(A), (C). If the FEC fails to do so within 30 days, the aggrieved party has a private right of action against the alleged violator. *Id.* § 30109(a)(8)(C).

## II.     The NRSC violates FECA.

In the 2024 election cycle, Sarkes Tarzian—a TV broadcast station owner—and the NRSC violated FECA's restrictions on corporate contributions by giving and accepting LUC for advertisements placed by the Nevada Victory Committee. The Nevada Victory Committee was a

4

joint fundraising committee between Sam Brown for Nevada (the principal campaign committee of a Republican Senate candidate) and the NRSC. Compl. ¶ 19. Sam Brown designated the Nevada Victory Committee an authorized committee for his campaign. *Id.* ¶ 20. But the Nevada Victory Committee was almost entirely funded by Republican Party committees, not contributions from the public or from candidates. *Id.* ¶ 21. Rather than distributing those contributions to its participating committees, the Nevada Victory Committee spent almost everything it raised on campaign advertisements in support of Sam Brown's campaign—and the cost for those advertisements was, under FEC regulations, nearly entirely paid by the NRSC because it took 97 percent of the Nevada Victory Committee's (minimal) net proceeds. *Id.* ¶¶ 24–25; *id.*, Ex. 1, ECF No. 1-1 at 5 ("Administrative Complaint").

Nevada Victory Committee spent almost $200,000 on television advertisements on KTVN Channel 2, owned by Sarkes Tarzian, an Indiana corporation. Compl. ¶ 26; *see also* Administrative Complaint at 4. Sarkes Tarzian sold this advertising time to the Nevada Victory Committee at the LUC. Compl. ¶ 26. This discounted rate (the LUC) was not offered in the ordinary course of Sarkes Tarzian's business to similarly situated clients like SMP, who paid substantially more for similar advertising—including advertising time purchased from Sarkes Tarzian in Nevada. *Id.* ¶¶ 27–28.[1] Because the Nevada Victory Committee was not a "legally qualified candidate," it was not entitled to the LUC, and Sarkes Tarzian's discounted advertisement sales constituted an illegal, in-kind contribution to the Nevada Victory Committee and the NRSC. *Id.* ¶¶ 30–31.

---

[1] *See also* FCC Public Inspection File: KTVN Political Files (as last accessed May 21, 2026), https://publicfiles.fcc.gov/tv-profile/KTVN/political-files/2024/non-candidate-issue-ads/winsenate/7c395603-9cf3-0dce-e9c9-db7c7c596d6b (showing substantial purchases of advertising time by WinSenate in 2024); Compl. ¶ 10 (alleging that SMP is a single legal entity that operates "WinSenate" as an FEC-registered filing organization). The Court may consider the online political file as incorporated into the complaint by reference. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

### III.    SMP's Complaint.

On August 13, 2025, SMP filed an administrative complaint with the FEC that made these allegations. *Id.* ¶ 1; *see also* Administrative Complaint.[2] The Administrative Complaint also explained the harm to SMP and requested a prompt investigation. Administrative Complaint at 5–6, 11. Then, nothing. After 176 days, the FEC had still not addressed SMP's complaint in any way to SMP's knowledge. Compl. ¶ 2. With no end in sight, SMP filed this lawsuit against the FEC to gain the right to proceed against the NRSC directly. *See generally* Compl.

## LEGAL STANDARD

In evaluating the NRSC's motion to dismiss, the Court must accept SMP's allegations as true and draw all reasonable inferences in SMP's favor. *See Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024). In assessing the NRSC's jurisdictional challenge, the "court must accept as true all material allegations on the complaint, and must construe the complaint in favor of the complaining party." *Martha's Vineyard/Dukes Cnty. Fishermen's Ass'n v. Locke*, 811 F. Supp. 2d 308, 313 (D.D.C. 2011) (internal quotation marks omitted) (quoting *Ord v. District of Columbia*, 587 F.3d 1136, 1140 (D.C. Cir. 2009)). "[W]here necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citation omitted). A similar standard applies to the NRSC's Rule 12(b)(6) challenge: the Court must ask whether SMP's complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[2] SMP's Administrative Complaint was dated August 13, 2025. Administrative Complaint at 11. NRSC notes that the FEC stamped it "RECEIVED" eight days later on August 21, 2025. NRSC Intervenor's Mot. Dismiss ("Mot."), Ex. 1 at 3, ECF No. 10-2. This eight-day difference does not materially affect the analysis, given the FEC's long and ongoing delay.

570 (2007)). This standard is satisfied where the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While "the pleadings must 'give the defendants fair notice of what the claim is and the grounds upon which it rests,'" *Jones v. Kirchner*, 835 F.3d 74, 79 (D.C. Cir. 2016) (quoting *Twombly*, 550 U.S. at 555), they need not contain "detailed factual allegations," *id.* (quoting *Iqbal*, 556 U.S. at 678), or "plead law or match facts to every element of a legal theory," *Slinski v. Bank of Am., N.A.*, 981 F. Supp. 2d 19, 26 (D.D.C. 2013) (citing *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000)), to survive a Rule 12(b)(6) motion.

## ARGUMENT

### I.    SMP has standing.

#### A.    SMP has adequately pleaded a competitive injury.

SMP suffers a competitive injury from the NRSC's receipt of unreported and unlawful in-kind corporate contributions and from the FEC's failure to act on SMP's complaint challenging it. "The doctrine of competitor standing" recognizes that plaintiffs "'suffer [an] injury in fact when agencies lift regulatory restrictions on their competitors or otherwise allow increased competition' against them." *Sherley v. Sebelius*, 610 F.3d 69, 72 (D.C. Cir. 2010) (quoting *La. Energy & Power Auth. v. FERC*, 141 F.3d 364, 367 (D.C. Cir. 1998)). The D.C. Circuit has "applied the doctrine of competitor standing to the political 'market.'" *Id.* (citing *Shays v. FEC*, 414 F.3d 76, 87 (D.C. Cir. 2005). In *Shays v. FEC*, the D.C. Circuit held that two members of Congress had competitor standing to challenge FEC regulations of private donors and political parties. *See Shays*, 414 F.3d at 85. The challenged rules permitted "supporters" of "rival candidates" to "finance issue ads more than 120 days before the election" and allowed "rival state parties" to "spend soft money to pay employees devoting a quarter of their time to defeating" the plaintiff congressmen. *Id.* at 86. The court explained that the candidates had standing to challenge the regulations because FECA creates

a legally cognizable right to a fair "competitive environment," the invasion of which creates standing. *Id.* And the challenged regulations infringed on this right by subjecting the plaintiffs "to a broader range of competitive tactics than federal law would otherwise allow." *Id.* Similarly, this Court has previously held that "a rival PAC has standing to challenge FEC dismissal of a complaint" against a competing PAC. *End Citizens United PAC v. FEC*, No. CV 21-2128 (RJL), 2022 WL 4289654, at *4 (D.D.C. Sep. 16, 2022) ("ECU, which competes with NRP in the context of Florida elections . . . has standing to challenge NRP's failure to disclose that information.").

SMP similarly has competitive standing because the FEC's failure to act on its complaint against the NRSC and the Nevada Victory Committee forces it to respond to "a broader range of competitive tactics" than FECA allows, *Shays*, 414 F.3d at 86, by unlawfully requiring SMP to pay more for advertising time than its competitor NRSC pays. SMP is an independent expenditure–only committee whose "singular mission is to elect Democrats to the United States Senate." Compl. ¶¶ 9–11.[3] The NRSC is a committee established by a national party whose sole purpose is to elect Republicans to the United States Senate. While their organizational forms differ, the two entities compete directly for limited advertising space and to persuade voters to support their respective candidates. SMP thus "competes in the same arena" with the NRSC. *Gottlieb v. FEC*, 143 F.3d 618, 621 (D.C. Cir. 1998); *see End Citizens United PAC*, 2022 WL 4289654, at *2, *4 (finding that a "Democratic political action committee" and a "Republican super PAC" "compete[]

---

[3] SMP, the named plaintiff here, "is a single legal entity that operates multiple FEC-registered filing organizations, including filing organizations called 'SMP' and 'WinSenate.'" Compl. ¶ 10. These are not "separate legal entities" as the NRSC claims. Mot. at 17 n.4. To the extent there is some factual dispute about that, the Court must take the allegation as true for purposes of this motion. *Harbury v. Deutch*, 244 F.3d 956, 958 (D.C. Cir. 2001) ("On a motion to dismiss, 'the factual allegations of the complaint must be taken as true, and *any* ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the pleader.'") (quoting *Doe v. U.S. Dept. of Justice*, 753 F.2d 1092, 1102 (D.C. Cir. 1985)).

in the context of Florida elections"). And by allowing the NRSC to continue to accept unlawful in-kind contributions in the form of discounted rates for television advertisements, the FEC's inaction on SMP's complaint allows the NRSC to purchase a greater volume of advertisements. *See* Compl. ¶ 34. That, in turn, forces SMP to respond with greater ad purchasing of its own to counteract the NRSC's message and persuade voters. *See id.* That increased spending is a classic "[p]ocketbook" harm—"a traditional Article III injury." *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 84 (2026) (Barrett, J., concurring). SMP and the NRSC are competitors not just in a political sense, but in an *economic* sense. They are both purchasers of television airtime for political ads— a finite resource. And SMP is injured when its competitor for that resource is allowed to purchase it at lower rates.[4] The NRSC's reliance on cases finding that Super PACs do not "directly compete" with candidates for office, Mot. at 12–13, is therefore misplaced. Neither SMP nor the NRSC are candidates for office. Both are outside entities that directly compete for limited airtime and the attention of voters to support or oppose candidates for office. In *AB PAC*, Judge Kelly explained the distinction: "that the candidate whom AB PAC plans to support in the 2024 presidential election may suffer a fundraising disadvantage relative to Trump because of the FEC's inaction on its excessive-contributions claim is of no moment; AB PAC has not shown that *it* has been disadvantaged." *AB PAC v. FEC*, No. 22-cv-2139 (TJK), 2023 WL 4560803, at *5 (D.D.C. July

---

[4] The NRSC is wrong to argue that SMP did not allege that it made past expenditures in opposition to Nevada Victory Committee in the Nevada Senate race. Mot. at 17. The Complaint specifically alleges that SMP paid Sarkes Tarzian more for the same class of advertising time that was purchased by the Nevada Victory Committee at LUC. Compl. ¶ 28. And the FCC's political files confirm SMP's substantial purchases, via the WinSenate FEC-registered filer. *See* FCC Public Inspection File: KTVN Political Files (as last accessed May 21, 2026), https://publicfiles.fcc.gov/tv-profile/KTVN/political-files/2024/non-candidate-issue-ads/winsenate/7c395603-9cf3-0dce-e9c9-db7c7c596d6b (showing substantial purchases of advertising time by WinSenate in 2024); Compl. ¶ 10 (alleging that SMP is a single legal entity that operates "WinSenate" as an FEC-registered filing organization).

17, 2023). Here, unlike in *AB PAC*, SMP does not seek to "stand in the shoes" of the Democratic candidates it supports "to seek relief for FECA violations committed by the [candidates'] potential opponent[s]." *Id.* It seeks relief for its *own* injuries resulting from increased competition through illegal tactics in the specific arena of political television advertising.[5]

The NRSC's response that it is not a rival Super PAC but instead a national party committee, Mot. at 14, defines the relevant "market" far too narrowly. The NRSC's insistence that competitive standing only arises between competitors with the same organizational form is inconsistent with *Shays* itself, which upheld competitive standing between candidates and "supporters" of other candidates, who ran independent issue advertisements that threatened the candidates. *See* 414 F.3d at 86. Regardless of their organizational structures, the NRSC and SMP compete in the same arena—not for votes, as do candidates, but for advertising space and to persuade voters to support the Senate candidates they favor.

### B.    SMP has adequately pleaded an informational injury.

In addition, and independently, SMP suffers an informational injury from the NRSC's acceptance of unreported unlawful in-kind contributions, and from the FEC's failure to act on SMP's complaint challenging it. "The law is settled that a denial of access to information qualifies as an injury in fact where a statute (on the claimants' reading) requires that the information be publicly disclosed and there is no reason to doubt their claim that the information would help them." *Campaign Legal Ctr. v. FEC* ("*Correct the Record*"), 31 F.4th 781, 783 (D.C. Cir. 2022) (quoting *Campaign Legal Ctr. & Democracy 21 v. FEC* ("*Democracy 21*"), 952 F.3d 352, 356 (D.C. Cir. 2020) (per curiam)). While a plaintiff asserting an informational injury typically must

---

[5] The NRSC's argument that "Because Super PACs, by law, are prohibited from coordinating their expenditures with a candidate, they do not compete with candidates," Mot. at 13, is both a non sequitur and misses the point. SMP's allegation is that it is in competition with the *NRSC*.

identify "downstream consequences," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021) (citation omitted), it is enough for a plaintiff to allege that "failure to receive the requested disclosures would harm its ability to advance its organizational mission." *CREW v. FEC*, No. 22-cv-3281 (CRC), 2023 WL 6141887, at *6 (D.D.C. Sep. 20, 2023) (citing *TransUnion*, 594 U.S. at 442), or that the requested information is "related to [its] informed participation in the political process," *Correct the Record*, 31 F.4th at 789 (quoting *Nader v. FEC*, 725 F.3d 226, 230 (D.C. Cir. 2013)); *see also End Citizens United PAC*, 2022 WL 4289654, at *4 (finding informational injury satisfied where alleged nondisclosure "deprived ECU of information to which it was entitled by law and that would be relevant to its work").

SMP has suffered—and will continue to suffer, due to the FEC's inaction—downstream consequences from the NRSC's receipt of illegal and unreported in-kind donations of discounted advertising time. SMP depends on accurate contribution reporting by its competitors, "disclosed and reported as FECA requires." Compl. ¶ 35. This information is critical for SMP to make informed decisions about where and when to spend its advertising money. For example, with more accurate information about the discounted rates the Nevada Victory Committee received, SMP could have "attempt[ed] to negotiate a discount of its own." *Id.* SMP also could have known "that Sarkes Tarzian was supporting SMP's political adversaries" through unlawful contributions, which impacts "SMP's decision whether to purchase advertising time from Sarkes Tarzian." *Id.* SMP could even "have publicized the special discounts." *Id.* Precisely because those discounts were unlawful, their reporting would have been a politically salient fact that SMP could have used in support of its own mission, and the failure to report them deprived SMP of that benefit. This information is thus "related to [SMP's] informed participation in the political process." *Correct the Record*, 31 F.4th at 789 (citation omitted); *see Bluman v. FEC*, 800 F. Supp. 2d 281, 288

11

(D.D.C. 2011) (three-judge court) ("[E]xpress-advocacy expenditures are an integral aspect of the process by which Americans elect officials to federal, state, and local government offices."). And this informational injury is not "entirely derivative" of SMP's competitive injury. Mot. at 15. Regardless of whether SMP or NRSC are "competitors" in the sense recognized by cases such as *Shays*, SMP is still a major purchaser of television advertising that uses campaign finance information to inform its media buying and in crafting messaging in support of the candidates it favors and in opposition to those it opposes. Compl. ¶ 12.

The Supreme Court has recognized that organizations that use campaign finance information "suffer[] an 'injury in fact' when the [organization] fails to obtain information which must be publicly disclosed pursuant to a statute." *Akins*, 524 U.S. at 21. That "information would help them (and others to whom they would communicate it) to evaluate candidates for public office, especially candidates who received assistance from [the organization], and to evaluate the role that [the organization's] financial assistance might play in a specific election." *Id.*; *see also Democracy 21*, 952 F.3d at 356 (holding that plaintiffs had standing to challenge "violations of FECA provisions that require accurate disclosure of contributor information, and the filing of public reports by political committees." (citation omitted)). SMP, too, relies on accurate and timely campaign finance disclosures not just to "defend and implement campaign finance reform," *Democracy 21*, 952 F.3d at 356, or to evaluate candidates, but to make decisions on spending money for advertisements to support the candidates the NRSC opposes and oppose the candidates that the NRSC supports. Compl. ¶ 35. The information is thus unquestionably "relevant to [SMP's] work." *End Citizens United PAC*, 2022 WL 4289654, at *4.

SMP did not need to plead that it would *certainly* have made different choices if it had received accurately reported information from the NRSC, as the NRSC seems to believe. Mot. at

12

16–17. A plaintiff suffers informational injury when deprived of the ability to make an *informed* decision—not necessarily a different decision. The point of an informational injury is that the injured party needs full and complete information in order to make informed decisions. In *Animal Legal Defense Fund, Inc. v. Vilsack*, 111 F.4th 1219 (D.C. Cir. 2024), for instance, a plaintiff who wished to buy dog food made from ethically raised chickens alleged that the Food Safety Inspection Service (FSIS) failed to adequately review graphics on poultry labels. *Id.* at 1229. The D.C. Circuit held that these allegations sufficed under *TransUnion* because the plaintiff "desire[d] information with which she can make an informed purchasing decision, and the 'information deficit' created by FSIS's policy 'hinder[s] [her] ability to do so.' . . . That is the sort of 'downstream consequence' that can establish Article III standing." *Id.* (quoting *TransUnion*, 594 U.S. at 442).[6]

So too here. Like the plaintiff in *Vilsack*, SMP is harmed by an "allegedly unlawful policy" that "prevents [it] from confidently making purchasing decisions" consistent with its strategic goals. *Id.*; *see also Neguse v. U.S. Immigr. & Customs Enf't*, 813 F. Supp. 3d 45, 74 (D.D.C. 2025) (holding plaintiff suffered "downstream consequences" where the "information deficit" created by the challenged policies "hinder[ed] their ability" "to make informed decisions" (citation modified)). And just as the plaintiff in *Vilsack* did not need to allege that she certainly would have made a different purchasing decision if she had accurate and complete information, SMP did not need to allege that it certainly would have made different television advertisement expenditures. It is enough that SMP has alleged "an intent to *use* the information to participate in . . . the political process." *Laufer v. Looper*, 22 F.4th 871, 881 (10th Cir. 2022) (emphasis added) (citing *Akins*, 524

---

[6] The D.C. Circuit nonetheless held that the plaintiff lacked standing on the independent ground that the injuries alleged were not "ongoing or imminent." 111 F.4th at 1230.

U.S. 11 (emphasis added)); *see also Neguse*, 813 F. Supp. 3d at 74 ("The Supreme Court has found standing when the denial of information harmed the requestors' ability to engage in the political and policymaking process." (citing *Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 449 (1989); *Akins*, 524 U.S. at 21)). All that is required is that the information sought has "some relevance" to SMP. *Griffin v. Dep't of Lab. Fed. Credit Union*, 912 F.3d 649, 654 (4th Cir. 2019); *see also End Citizens United PAC*, 2022 WL 4289654, at *4.

Nor is the NRSC correct that SMP lacks informational injury because the information it seeks is available from a different source. Mot. at 15–16. That inquiry "starts and stops with examining whether a plaintiff 'only seek[s] the same information from a different source' such that *no 'additional facts'* will result." *Correct the Record*, 31 F.4th at 791 (emphasis added) (quoting *Wertheimer v. FEC*, 268 F.3d 1070, 1074–75 (D.C. Cir. 2001)). The NRSC points to the Communications Act, which requires public disclosure of information about political ad buys. Mot. at 15 (citing 47 U.S.C. § 315(e)(1)). While FCC records may contain the name of the candidate, the date and time the advertisement airs, and the rate charged, *id.*, that is not the entire picture. The FCC reports do not report the LUC discounts for what they truly are—an unlawful in-kind contribution. Had they been reported as such, SMP could have used that admission in its own political messaging. Moreover, the FCC reports also omit a critical element: what NRSC would be charged *if not* the LUC. In other words, the extent of the discount—the value of the in-kind contribution—is a key fact missing from the reports NRSC references. To make informed decisions, SMP needs to know the extent of the benefit to NRSC. This critical and additional fact could help SMP negotiate for better advertising rates because they would know how much of a discount their competitor received. And it would inform SMP of the degree of support Sarkes Tarzian provided SMP's political rival, which influences its decision to publish such information

14

and whether to purchase advertisements from Sarkes Tarzian at all. Accurate reporting would therefore disclose "additional facts." *Correct the Record*, 31 F.4th at 792.

Finally, SMP's informational injury will continue into future elections unless the NRSC's violations are checked. Compl. ¶¶ 32, 36. The fact that the Nevada Victory Committee is defunct is irrelevant; the NRSC is still active, and its illegal conduct will put SMP at a disadvantage in future elections, including those held this year. Compl. ¶ 36.

### C.     SMP's injuries are redressable.

The NRSC is also wrong to argue that a favorable ruling from the FEC here would not redress SMP's alleged injuries. By seeking action against the NRSC for multiple violations across almost $200,000 in advertisement purchases, SMP seeks to prevent or deter future violations in the 2026 election cycle and beyond. It need not identify a specific Senate race where a future violation may occur. *Contra* Mot. at 19. SMP has adequately alleged that the information deficits and unfair competition it encountered in the 2024 election cycle are likely to recur in 2026 and thereafter. *See* Compl. ¶ 32. And the NRSC's "past wrongs" are "evidence bearing on whether there is a real and immediate threat of repeated injury." *Jibril v. Mayorkas*, 20 F.4th 804, 814 (D.C. Cir. 2021) (citation modified).

The NRSC's argument that the FEC "lacks jurisdiction" to redress SMP's administrative complaint suffers from two problems. First, SMP's administrative complaint alleges not just that the NRSC is not entitled to LUC, but that providing a special political discount—for which the NRSC and Nevada Victory Committee are ineligible—is an unlawful in-kind contribution in violation of FECA, which the FEC has jurisdiction to enforce. Second, the LUC statute was enacted in its present form *as part of FECA*, *see Hernstadt*, 677 F.2d at 897, and it incorporates FECA's definitions of key terms. *See* 47 U.S.C. § 315(b)(2)(F). The FEC MUR that NRSC cites

does not suggest otherwise. *Contra* Mot. at 20. There, the FEC was asked to address whether a television advertisement by a candidate-authorized committee ("Darcy Burner for Congress") on behalf a candidate (Darcy Burner) qualified for the LUC despite lacking a "stand by your ad" disclaimer, a question governed by the Communications Act. FEC, MUR 5834 (Darcy Burner for Congress) (June 28, 2007), Factual & Legal Analysis, at 1. This question was more difficult for the FEC because the operative disclaimer provisions lie in the Communications Act, not FECA. *See id.* at 5–6 (citing 47 U.S.C. § 315(b)(2)). Here, in contrast, the underlying legal issue rests in substantial part on the JFC regulations, which make clear that NRSC must be treated as paying for nearly all of the Nevada Victory Committee's advertising expenses. 11 C.F.R. § 102.17(c)(7)(i)(A). Moreover, the question of whether the unauthorized provision of an LUC discount to a party committee qualifies as an unlawful in-kind contribution under FECA—and whether the FEC is well suited to answer that question—goes to the merits of SMP's underlying administrative complaint, which the NRSC firmly insists are "not at issue" here. Mot. at 8.[7]

Finally, the NRSC's argument that private parties lack standing to bring a lawsuit "alleging inadequate law enforcement," Mot. at 21, misses the point. SMP "seek[s] information to facilitate [its] informed participation in the political process" and to redress the competitive injuries described above—not "to force the FEC to 'get the bad guys.'" *Nader*, 725 F.3d at 230. SMP "is not merely suing to force [the NRSC] to follow the law because of a general interest in the common

---

[7] It is also not true that the FCC "has long held that all committees authorized by a candidate committee *are* entitled to the lowest unit charge." Mot. at 21. That position was announced for the first time in the FCC Media Bureau's March 30, 2026, Public Notice providing Guidance on Entitlement to Lowest Unit Charge for Legally Qualified Candidates for Federal Office and All Authorized Committees, DA 26-300. That notice announces for the first time the FCC's interpretation that LUC should be extended to JFCs. And while the Guidance purports to merely "restate previous Media Bureau guidance" on the subject of party committee coordinated spending, it does not cite any, and SMP is aware of none. And in any event, the Media Bureau's guidance is not a rule and does not have the force of law.

concern for obedience to law. Instead, [SMP] is allegedly uniquely injured by a lack of information it is legally entitled to and by [the NRSC's] allegedly unlawful withholding of that information." *Campaign Legal Center v. Iowa Values*, 573 F. Supp. 3d 243, 255 (D.D.C. 2021) (internal citation omitted). And for the reasons explained *infra* Part IV, there is no constitutional barrier to the Court awarding the relief ultimately sought here—the ability to bring a citizen suit to enforce private rights.

## II.    The FEC has not acted on SMP's administrative complaint.

The NRSC is wrong to argue that, despite its lack of quorum, the FEC "acted" within the meaning of FECA when it issued a notification letter to the NRSC in August 2025. Mot. at 22–24. The sending of a notification letter under 52 U.S.C. § 30109(a)(1) is a purely ministerial step that must occur *before* "any vote on the complaint, other than a vote to dismiss," to give the alleged violator an opportunity to demonstrate "that no *action* should be taken." *Id.* (emphasis added). FECA thus by its plain terms distinguishes notification in writing from "action" on the complaint. It would be nonsensical to say that the recipient of the notification must have an opportunity to argue that "no action should be taken against such person" if the sending of the notification itself qualified as an "action." And the verb form of the word "action"—to "act"—should have the same meaning in 52 U.S.C. § 30109(a)(8)(C) that it does in 52 U.S.C. § 30109(a)(1). *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005).

The NRSC cites no precedent for its contrary interpretation and there is none. The D.C. Circuit in *45Committee, Inc.*, held that a failed reason-to-believe vote qualified as "some cognizable enforcement step under the statute." *Campaign Legal Ctr. v. 45Committee, Inc.*, 118 F.4th 378, 391 (D.C. Cir. 2024). That is a far cry from the mere sending of a notification letter, which is done automatically without any vote by the Commission. In *Perot v. FEC*, 97 F.3d 553 (D.C. Cir. 1996), the court simply observed that the "next step" after sending a notification letter

17

"is for the FEC to vote to determine whether there is reason to believe the subject of the complaint has violated the Act." *Id.* at 558. And in *Level the Playing Field v. FEC*, 232 F. Supp. 3d 130 (D.D.C. 2017), the court held the FEC to its ministerial notice obligation but said nothing to suggest that such notice qualifies as a "cognizable enforcement step." *See 45Committee*, 118 F.4th at 391. None of these cases even remotely suggests that sending a notification letter is a "cognizable enforcement step," nor that the FEC may take such a step in the absence of a quorum. That interpretation would swallow Section 30109(a)(8)(C)'s "failure to act" provision whole.

## III.    The FEC's failure to act on SMP's Administrative Complaint is contrary to law.

The FEC's lack of quorum does not shield its inaction—or the NRSC's FECA violations—from judicial review. To the contrary, "Congress foresaw the possibility that the FEC could abdicate its responsibilities to serve as an electoral watchdog." *Iowa Values*, 573 F. Supp. 3d at 249. Congress therefore provided a backstop: in the event of "a failure of the Commission to act on [its] complaint," a plaintiff "may bring . . . a civil action to remedy the violation involved in the original complaint." 52 U.S.C. § 30109(a)(8)(C). SMP seeks to avail itself of this congressionally mandated relief valve by obtaining a declaration from this Court that would permit it to initiate a citizen suit against the NRSC directly.

### A.    The *Common Cause* and *TRAC* factors demonstrate that the FEC's failure was contrary to law.

The traditional factors for evaluating whether FEC inaction is contrary to law, to the extent they are applicable here, weigh in SMP's favor. Inaction, and the reasons for inaction, are typically analyzed under factors laid out in *Common Cause v. FEC* ("*Common Cause*"), 489 F. Supp. 738 (D.D.C. 1980), and *Telecommunications Research & Action Center v. FCC* ("*TRAC*"), 750 F.2d 70 (D.D.C. 1984). *See 45Committee*, 118 F.4th at 383. The *Common Cause* and *TRAC* courts laid out several, non-exhaustive equitable factors to assess the explanations for the FEC and FCC's

18

inaction, respectively. A debilitating lack of quorum pushes these factors to their useful limits, but considering each in turn still shows that the FEC's failure to act on SMP's complaint—and the lack of any prospect of future action—is contrary to law.

"When evaluating whether the FEC's inaction on a complaint is 'contrary to law,' the Court must determine whether the FEC acted 'expeditiously' considering factors such as 'the credibility of the allegation, the nature of the threat posed, the resources available to the agency, and the information available to it, as well as the novelty of the issues involved.'" *Iowa Values*, 573 F. Supp. 3d at 252 (quoting *Common Cause*, 489 F. Supp. at 744). Here, each of these factors support finding that the FEC's delay is contrary to law.

The allegations in SMP's Complaint establish the "credibility" of the underlying Administrative Complaint and the serious threat posed "to the integrity of the electoral system." *Id.* at 253. SMP's allegations also demonstrate "a threat of recurrence." *Giffords v. FEC*, No. 19-cv-1192 (EGS), 2021 WL 4805478, at *5 (D.D.C. Oct. 14, 2021); *see* Compl. ¶ 32. The NRSC acknowledges these allegations, complaining that "the bulk of the Complaint seeks to color this Court's perception of the underlying merits of Senate Majority PAC's administrative complaint." Mot. at 8. Puzzlingly, the NRSC simultaneously claims that the underlying merits are "not at issue in this case," *id.* and faults SMP for failing address these factors, *see id.* at 25–26. But the underlying factual allegations are not disputed and are apparent from the FEC's own records and the public FCC filings that NRSC cites. The information necessary to resolve SMP's Administrative Complaint is readily available to the FEC. *See* Compl., Ex. 1 at 4 n.16, ECF No. 1-1 (citing FCC Political Files); *see also* Mot. at 16 (same); *cf. Iowa Values*, 573 F. Supp. 3d at 253 (noting complaint could be verified by public records). SMP's complaint presents pure questions of law. The only thing "novel" about the issues involved is the egregiousness of the

19

NRSC's and Sarkes Tarzian's violations. The underlying law is straightforward. In any event, "novelty" might justify delay if an agency were actively investigating and considering a complaint; it cannot justify the FEC's complete failure to act here.

For similar reasons, the FEC's resources are a less relevant factor here: without a quorum, the FEC cannot expend resources investigating a complaint or engaging in litigation. *See* 52 U.S.C. § 30107(a)(6), (9); *see also id.* § 30106(c). Applying the resources factor here forces a square peg in a round hole: the resources inquiry is meant to evaluate the agency's triage of competing demands in the face of finite resources, not total paralysis due to a lack of quorum. In *Iowa Values*, for example, the court connected the resources and novelty factors, noting the relevance of "a novel issue that would demand a substantial amount of the agency's resources." 573 F. Supp. 3d at 253. The NRSC does not argue that resolving the purely legal issues in SMP's complaint would demand some extraordinary amount of FEC time, money, or other resources. And courts in this district have routinely refused to excuse FEC inaction simply due to a lack of quorum. *See, e.g.*, *Iowa Values*, 573 F. Supp. 3d at 254 ("Like other courts in this district, this Court will not excuse the FEC's inaction just because there were periods where it lacked a quorum."); *Giffords*, 2021 WL 4805478, at *7 (finding, even when the FEC lacked a quorum for 16 months, "the FEC cannot ignore its statutory obligations by allowing a matter to languish").

At bottom, the *Common Cause* factors are meant to probe whether the FEC acted "expeditiously." 489 F. Supp. at 744. The *Common Cause* court was "disturbed" by the FEC's delay, but the FEC was spared a contrary-to-law ruling because it had delayed to "collect[] . . . further evidence," entered conciliation agreements with the majority of the parties named in the complaint, and represented that the remaining complaints would be settled soon. *Id.*

20

at 744. Here, the FEC has taken *no* action on SMP's complaint, and there is no reasonable prospect

that it will do so any time soon.

Courts also look to the *TRAC* factors in evaluating the reasons for the FEC's delay. *See,*

*e.g.*, *Iowa Values*, 573 F. Supp. 3d at 253. Those factors include:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Giffords*, 2021 WL 4805478, at *4 (citing *TRAC*, 750 F.2d at 80). The statutory "timetable," is

primary among these factors because through it, Congress has spoken to the "the speed with which

it expects the agency to proceed." *TRAC*, 750 F.2d at 80. "Here, Congress provided a 'timetable'

to inform the rule of reason: when the FEC fails to 'act on such complaint during the 120-day

period beginning on the date the complaint is filed,' citizens are allowed to challenge that delay in

federal court." *Iowa Values*, 573 F. Supp. 3d at 253 (quoting 52 U.S.C. § 30109(a)(8)(A)); *cf.*

*Mashaghzadehfard v. Blinken*, Case. No. 23-cv-3164 (RJL), 2024 WL 4198689, at *4 (D.D.C.

Sept. 16, 2024) (holding language in the INA expressing the "sense of Congress" that processing

of immigration applications "should" take no longer than 180 days "is nothing more than an

21

'aspirational statement' that is precatory, not binding") (citation omitted). The FEC's delay of now 282 days (and counting)—56 days beyond the statutory requirement—therefore weighs heavily in favor of finding the delay contrary to law. *Cf. FEC v. Rose*, 806 F.2d 1081, 1091 n.17 (D.C. Cir. 1986) ("[W]hen we look to the Campaign Act itself to inform a rule of reason, we see that the Commission acted within all of the time limits specified in that statute" despite a "two-year delay").

Factors three and five—prejudicial effect and tolerability of delay—also support SMP here. As "multiple courts in this district have recognized[,] 'threats to the health of our electoral processes also require timely attention.'" *Iowa Values*, 573 F. Supp. 3d at 253 (quoting *Giffords*, 2021 WL 4805478, at *6); *see also DSCC v. FEC*, No. Civ.A. 95-0349 (JHG), 1996 WL 34301203, at *8 (D.D.C. Apr. 17, 1996) ("Threats to our electoral processes should not be encouraged by FEC lethargy . . . ."). SMP's Administrative Complaint alleges hundreds of thousands of dollars of improper in-kind contributions in violation of FECA just in one Nevada Senate campaign. Administrative Complaint at 4. The contribution laws at stake here are not merely economic— they critically impact the outcomes of elections. *See* Compl. ¶¶ 34, 36. "In view of the significant amount of money at issue and the potential harms that could result if [SMP's] allegations are proven true," the FEC's failure to act was prejudicial. *Giffords*, 2021 WL 4805478, at *6. And the prejudice to SMP in particular is significant because this dispute impacts its ability to compete on a level electoral field in the important and upcoming 2026 elections. *See supra* Part I.

As to the fourth factor, the FEC is not struggling with "higher" or "competing" priorities— it is in a state of complete paralysis. This is not a case where the FEC is simply dragging its feet, taking its time to investigate the facts, constrained by limited resources, or exercising its discretion to choose among enforcement priorities. The agency is simply unable to act.

22

Finally, *TRAC*'s instruction that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed," 750 F.2d at 80 (internal quotation marks and citation omitted), supports a contrary to law finding here in the absence of a quorum. SMP does not argue that the FEC could have or should have acted without a quorum—the law forbids it. But it is nevertheless true that nothing has been done on SMP's Administrative Complaint, and that there seems to be no prospect of anything being done anytime soon. The equitable considerations laid out in *Common Cause* and *TRAC* are not a matter of assigning blame. "Like other courts in this district, this court [should] not excuse the FEC's inaction just because there were periods when it lacked a quorum." *Iowa Values*, 573 F. Supp. 3d at 254.

## B.     The FEC's lack of quorum necessitates, rather than precludes, judicial review.

Despite Congress's clear intent to provide redress when the FEC's administrative process breaks down, the NRSC would allow a lack of quorum to grind FECA's entire enforcement mechanism to an indefinite halt. Mot. at 26. According to the NRSC, delay—even interminable delay—means a complaint like SMP's "must be dismissed" in the absence of a quorum. *Id.* at 29. That is backwards. The lack of a quorum counsels in *favor* of judicial review here. Not only has the FEC failed to act on SMP's Administrative Complaint—there is no reasonable probability that it will take any such action in the foreseeable future. Indeed, as all agree, it is statutorily unable to do so.

Both in the FECA context and elsewhere in administrative law, it is well established that a lack of quorum does not insulate agency inaction from judicial review. Courts in this circuit have routinely refused to excuse FEC inaction when it lacks a quorum. *See, e.g.*, *Iowa Values*, 573 F. Supp. 3d at 254; *Giffords*, 2021 WL 4805478, at *7. Similarly to FECA's enforcement provision,

23

the Administrative Procedure Act contains a right to seek judicial relief for "agency action unlawfully withheld." 5 U.S.C. § 706(1). As the Supreme Court observed in *Arizona v. Inter Tribal Council of Arizona, Inc.*, a litigant is still "free" to pursue this action even when an agency "lacks a quorum." 570 U.S. 1, 19 n.10 (2013). While the Court reserved the question of remedy— "whether a court can *compel* agency action," *id.* (emphasis added)—that is a separate question from the reasonableness of the agency's inaction.

Here, the FEC's lack of quorum is no bar to this Court finding an unreasonable delay, nor does NRSC cite any case that says otherwise. All SMP seeks is an order "declar[ing]" the failure to act was contrary to law, and "direct[ing]" the proper course, which is that its complaint should be heard and acted on as Congress provided either by the agency or by a court. 52 U.S.C. § 30109(a)(8)(C); *see also* Order, *Campaign Legal Ctr. v. FEC*, No. 1:20-cv-1778 (D.D.C. Oct. 14, 2020), ECF No. 14 (finding the FEC's failure to act contrary to law and directing the FEC to conform with the order); Order, *Campaign Legal Ctr. v. FEC*, No. 1:20-cv-1778 (D.D.C. Feb. 11, 2021), ECF No. 24 (finding that the FEC had failed to comply with the court's October 14, 2020 order and declaring that plaintiff could bring a civil action).

Reading FECA as the NRSC suggests would also mean that the civil suit backstop is totally unavailable when it is most needed: when the FEC *cannot* act. Statutes should be read to avoid such absurdity. *Cannon v. Watermark Ret. Cmtys., Inc.*, 45 F.4th 137, 149 (D.C. Cir. 2022). *McCutcheon v. FEC*, 496 F. Supp. 3d 318 (D.D.C. 2020), is no help to NRSC on this score, *contra* Mot. at 28, and only illustrates Congress's intent to provide a path forward for complainants like SMP. *McCutcheon* involved a party's request for an FEC advisory opinion under 52 U.S.C. § 30108, which permits requests for advice "concerning the application" of the FECA—a far cry from a live dispute between two parties. *McCutcheon*, 496 F. Supp. 3d at 321. While the FEC has

24

a duty to timely act on such requests, *see* 52 U.S.C. § 30108(a), there is no right of action under Section 30108 to seek judicial review of the agency's delay. And, more importantly, there is no provision in that section permitting a plaintiff to bring a civil action in district court for an advisory opinion. In the absence of such provisions, the *McCutcheon* court found that, to give "effect . . . to all its provisions," FECA's quorum requirement controlled and ensured that advisory opinions issue only when a proper majority agrees on that guidance. 496 F. Supp. 3d at 333.

Section 30109, unlike Section 30108, *does* offer SMP an avenue for redress in this circumstance—a contrary to law declaration followed by a citizen suit under Section 30109(A)(8)(C). Courts "assume that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another section of the same Act." *Polselli v. IRS*, 598 U.S. 432, 439 (2023) (internal quotation marks and citation omitted). Here, Congress has addressed the problem of delay with the private right of action in Section 30109(a)(8)(C). All the Court must do is give effect to Congress's chosen remedial scheme, which explicitly contemplates citizen suits in the event that the FEC—whether due to a lack of quorum or political deadlock—may fail in its duty to act on administrative complaints.

## IV.     FECA does not violate Article II.

The NRSC's argument that FECA's entire enforcement mechanism violates Article II misapprehends the nature of the FEC's inaction and has been rejected by multiple courts. As an initial matter, the NRSC's arguments regarding the FEC's prosecutorial discretion are misplaced because the FEC has not invoked its discretion here. True, the FEC may act on an administrative complaint by declining to bring an enforcement action as a matter of prosecutorial discretion. *See Campaign Legal Ctr. v. FEC*, No. 19-cv-2336 (JEB),  2025 WL 315143, at \*5 (D.D.C. Jan. 28, 2025) ("The basis for such declinations may be considerations of prosecutorial discretion, which have been deemed virtually unreviewable—at least for now." (citing *End Citizens United PAC v.*

*FEC*, 90 F.4th 1172, 1178–79 (D.C. Cir. 2024)), *appeal docketed*, No. 25-5027 (D.C. Cir. Feb 12, 2025).[8] But that is not what happened here. The FEC did not engage in any "prosecutorial decisionmaking." Mot. at 31. It simply did not make any choice at all. The D.C. Circuit has "expressly rejected" the argument that "deadlock dismissals" are "simply exercises of prosecutorial discretion." *End Citizens United PAC v. FEC*, 69 F.4th 916, 920 (D.C. Cir. 2023) (quoting *DCCC v. FEC*, 831 F.2d 1131, 1133–34 (D.C. Cir. 1987)). Instead, "to determine whether the Commission exercised its prosecutorial discretion under *Heckler* in effecting a deadlock dismissal, the court looks not to the label given to one or more of its failed votes but rather to the statement of reasons of the controlling Commissioners." *Id.* at 921; *cf. CREW v. FEC*, 892 F.3d 434, 439 (D.C. Cir. 2018) ("The three naysayers on the Commission placed their judgment squarely on the ground of prosecutorial discretion."). Here, there was no statement of reasons—or even a failed vote—because the FEC lacked the quorum necessary even for a deadlock dismissal. There was therefore no exercise of prosecutorial discretion.

Nor is the NRSC correct that FECA's citizen suit provision violates Article II. Mot. at 31. This Court has previously rejected that argument, explaining that § 30109(a)(8)(C) citizen suits "do not violate the Take Care Clause" in Article II "because these suits do not implicate the Executive Branch's prosecutorial discretion. If the FEC determines in its prosecutorial discretion to decline enforcement and dismiss a complaint, that action cannot be held contrary to law and cannot trigger § 30109(a)(8)(C)." *Iowa Values*, 573 F. Supp. 3d at 256 (citing *CREW v. Am. Action Network*, 410 F. Supp. 3d 1, 26 (D.D.C. 2019)). Moreover, § 30109(a)(8)(C) "does not violate Article II because in every case in which it is available, the citizen with standing to invoke the

---

[8] The D.C. Circuit has granted rehearing *en banc* in *End Citizens United PAC* to reconsider whether FEC dismissals resting on prosecutorial discretion are immune from judicial review. *End Citizens United PAC v. FEC*, No. 22-5277, 2024 WL 4524248 (D.C. Cir. Oct. 15, 2024).

provision does so in its own name to remedy a violation of federal law that has caused it injury." *CREW*, 410 F. Supp. 3d at 27 (internal quotation marks and citation omitted). In other words, a private citizen bringing a citizen suit under FECA is "not vindicating a public right in the courts" but is instead "vindicating its own unique and particularized informational injury." *Iowa Values*, 573 F. Supp. 3d at 256.

## CONCLUSION

The Court should deny the NRSC's motion to dismiss.


Dated: May 22, 2026                               Respectfully submitted,

                                                  /s/ *David R. Fox*
                                                  David. R. Fox (D.C. Bar No. 1015031)
                                                  Richard A. Medina (D.C. Bar No. 90003752)
                                                  dfox@elias.law
                                                  rmedina@elias.law
                                                  **ELIAS LAW GROUP LLP**
                                                  250 Massachusetts Ave. NW, Suite 400
                                                  Washington, D.C. 20001
                                                  Tel: (202) 968-4490

                                                  Walker McKusick* (WA Bar No. 63205)
                                                  wmckusick@elias.law
                                                  **ELIAS LAW GROUP LLP**
                                                  1700 Seventh Avenue, Suite 2100
                                                  Seattle, WA 98101
                                                  Tel: (202) 968-4659

                                                  *Counsel for Plaintiff*

                                                  *Admitted pro hac vice